UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| THE DOE RUN RESOURCES CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:10CV1875 JAR |
| | ) | |
| LEXINGTON INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on The Doe Run Resources Corporation's Motion for Partial Summary Judgment Against Lexington Insurance Company (ECF No. 54), Defendant Lexington Insurance Company's Motion for Summary Judgment Regarding the Pollution Exclusion (ECF No. 59), and Defendant Lexington Insurance Company's Motion for Summary Judgment Based on the "Loss in Progress" Doctrine (ECF No. 62). Oral argument was held on June 1, 2012, and these matters are fully briefed and are ready for disposition. Because this Court grants summary judgment on Defendant Lexington Insurance Company's Motion for Summary Judgment Regarding the Pollution Exclusion, the Court does not address the other motions.

**BACKGROUND**

**A. The Litigation**

Doe Run Resources Corporation ("Doe Run") is a company that mines, mills and smelts lead. Lexington Insurance Company ("Lexington") has been a general commercial liability insurer since at least 1995. In this action, Doe Run seeks a declaration that Lexington is responsible for Doe Run's defense costs in two lawsuits: Dakota Briley, et al. v. The Doe Run Resources Corporation, et al., Case No. 09SF-CC01270, Farmington County Circuit Court, Missouri (hereinafter "Briley

Lawsuit") and Rebekka McSpadden, et al. v. The Doe Run Resources Corporation, et al., Case No. 105FCC0078, St. Francois County Circuit Court, Missouri (hereinafter "McSpadden Lawsuit"). (The Doe Run Resources Corporation's Response to Defendant Lexington Insurance Company's Separate Statement of Material Facts in Support of Doe Run's Opposition to Lexington's Motions for Summary Judgment Re: The Pollution Exclusion ("Doe Run SUMF"), ECF No. 96, ¶112). The Briley Lawsuit consists of a putative class of minors who allege claims for negligence (Count I), absolute or strict liability (Count II), private nuisance (Count III), and trespass (Count IV). (ECF No. 21). The Briley Lawsuit plaintiffs seek, inter alia, medical monitoring and other damages. (Doe Run SUMF, ¶113). The Briley plaintiffs allege that, beginning as early as 1991, Doe Run negligently, carelessly and recklessly released lead and other toxic substances to areas beyond the boundaries of the Leadwood Pile in Leadwood, Missouri, and failed to warn about the reasonably foreseeable effects of such releases. (Doe Run SUMF, ¶¶116-17).

The McSpadden Lawsuit involves individual plaintiffs who allege claims for negligence (Count I), strict liability for the release of toxic substances (Count II), and strict liability for allowing public access on and around the Leadwood Pile (Count III). (ECF No. 21). The McSpadden plaintiffs allege that Doe Run released lead, cadmium, and other toxic chemicals from its chat and tailings piles in Leadwood, Missouri. (Doe Run SUMF, ¶119). The McSpadden plaintiffs allege, since at least 1992, that they have suffered from various physical and mental disorders due to these toxic chemicals. (Doe Run SUMF, ¶45; McSpadden Lawsuit, ¶27).

On November 4, 2009, Doe Run sent Lexington a letter demanding defense coverage for the Briley Lawsuit under the Policies (defined below). (Doe Run SUMF, ¶124). On or around January 22, 2010, Lexington (through Chartis) denied coverage on the basis that there was no "bodily injury" or "property damage" caused by an "occurrence" and that the claims were subject to a pollution

exclusion. (Doe Run SUMF, ¶¶125, 126). On or around April 16, 2010, Doe Run sent a letter to Lexington demanding defense coverage for the McSpadden Lawsuit. (Doe Run SUMF, ¶127). On or around June 14, 2011, Chartis, on behalf of Lexington, denied coverage on the same grounds it denied coverage for the Briley Lawsuit. (Doe Run SUMF, ¶128). Thereafter, Doe Run commenced this action for declaratory relief, breach of contract and vexatious refusal to pay.

**B. The Policies**

At issue in this case are coverage under several policies issued by Lexington to Doe Run (hereinafter "the Policies").

A typical Lexington Policy states:

> The Company [Lexington] will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as compensatory damages ... because of
>
> bodily injury, or
>
> property damage
>
> to which this insurance applies, cause by an an [sic] occurrence which takes place within the policy territory, and the Company shall have a right and duty to defend any suit against the Insured seeking damages on account of such bodily groundless, false or fraudulent ... (Doe Run SUMF, ¶89).

The Policies also define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Doe Run SUMF, ¶91).

The Policies each contain a standard pollution exclusion for CGL policies. Prior to 2004, the Policies excluded coverage for:

> bodily injury or property damage (including the loss of use thereof) caused by, contributed to or arising out of the actual or threatened discharge, dispersal, release, or escape of smoke, vapors, soot, fumes, acids, alklis, toxic chemicals, liquids or gases, waste materials or other irritants, pollutants or contaminants into or upon the land, the atmosphere or any course of body of water, whether above or below ground.

(Doe Run SUMF, ¶2).

The 1995-2003 Policies had no separate definition of "pollutant".

Beginning in November 2004, Lexington issued a new policy that exclude coverage for:

> "bodily injury" or "property damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

(Doe Run, SUMF, ¶3). The 2004 and onward Policies included a separate definition of "pollutants" as "any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed." (Id.).

In 2004 Lexington also began using a new general liability form that included "a lead exclusion," which sought to bar coverage for any lead-related claims or liabilities. (Doe Run SUMF, ¶¶93, 95, 97, 99, 101, 103). After Doe Run objected to the lead exclusions, however, they were deleted from Doe Run's insurance contracts by special endorsements and never became part of the policy coverage. (Doe Run SUMF, ¶¶94, 96, 98, 100, 102, 104-06).

Doe Run points to two emails regarding the applicability of a lead exclusion. In one email, Meredith King (Lexington's referral underwriter) wrote to Nancy Richard (Lexington's designated underwriter):

> [Nancy Richards' email]: "[A]s this is a lead mine it is hard to exclude lead and still indicate we are providing coverage. Based on the notes from the client due to the inherit [sic] nature of the risk, we cannot exclude the lead...."
> [Meredith Kind response]: "Approved."

(Doe Run SUMF, ¶110). Similarly, a November 18, 2002 email from Rhea Nanna (Lexington) states, "Pollution exclusions do not have a history of preventing lead claims." (Doe Run SUMF, ¶111).

**SUMMARY JUDGMENT STANDARD**

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986); Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011). The substantive law determines which facts are critical and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. Id. Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex Corp., 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. Anderson, 477 U.S. at 258. "[A] properly supported motion for summary judgment is not defeated by self-serving affidavits." Conolly v. Clark, 457 F.3d 872, 876 (8th Cir. 2006) (citing Davidson & Assocs. v. Jung, 422 F.3d 630, 638 (8th Cir. 2005)).

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. Celotex Corp., 477 U.S. at 331, n.2. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury

functions, not those of a judge.'" Torgerson, 643 F.3d at 1042 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)).

## DISCUSSION

### A. Choice of Law

The parties agree that Missouri law applies to the post-2002 policies. Lexington, however, argues that New York law applies to the 1995-2002 policies. (Defendant Lexington Insurance Company's Memorandum of Law in Support of its Motion for Summary Judgment Regarding the Pollution Exclusion ("Memorandum"), ECF No. 60, pp. 4-6). Notably, neither Lexington nor Doe Run identify any difference in result depending upon which state's law applies.[1]

District courts, whether sitting in diversity or deciding supplemental state law claims, are required to use the choice-of-law rules for the state in which it sits. DCS Sanitation Mgmt., Inc. v. Castillo, 435 F.3d 892, 895 (8th Cir. 2006); Wolfley v. Solectron USA, Inc., 541 F.3d 819, 823 (8th Cir. 2008); Rosemann v. Sigillito, No. 10-CV-1165-LRR, 2012 U.S. Dist. LEXIS 88541, at *9 (E.D. Mo. June 26, 2012). Missouri has adopted Sections 188 and 193 of the Restatement (Second) of Conflict of Laws (1971) for the purpose of determining which state's law governs the interpretation of an insurance policy which does not contain a choice of law provision. Viacom, Inc. v. Transit Cas. Co., 138 S.W.3d 723, 724-25 (Mo. 2004); Reyes v. Nationwide Mut. Ins. Co., No. 4:10-cv-01381, 2011 U.S. Dist. LEXIS 61578, at *6 (E.D. Mo. June 9, 2011). Pursuant to Section 188, the law of the state with the "most significant relationship to the transaction and the parties" applies. Restatement (Second) of Conflict of Laws (1971) § 188(1). The contacts to be taken into account when identifying the most significant relationship include: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of

---

[1]Thus, it is difficult to find the "conflict" in this conflict or choice of law analysis.

the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties." Id. § 188(2). Generally, "[t]he location of the insured risk will be given greater weight than any other single contact in determining the state of the applicable law provided that the risk can be located, at least principally, in a single state." Id. § 193 cmt. b. However, "where the policy covers a group of risks that are scattered throughout two or more states," the location of the risk has less significance. Id.; see also Viacom, 138 S.W.3d at 725 (location of risk has less significance where risks are scattered throughout two or more states); Reyes, 2011 U.S. Dist. LEXIS 61578, at *7-8 (same).

Lexington argues that, for the 1995-2002 policies, New York has the most significant relationship to the transaction and the policies. Lexington asserts that (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, and (d) the location of the subject matter of the contract, all favor applying New York law. Doe Run was acquired by New York City-based The Renco Group, Inc. in 1994, who negotiated and executed the insurance contracts in New York. Lexington acknowledges that Doe Run "has significant mining, milling and smelting operations in Missouri," but claims that that is not determinative because "the risks insured under the Policies included operations in multiple states and products liability risks nationwide." (Memorandum, p. 5). Likewise, Lexington claims that the final factor, the domicile, residence, nationality, place of incorporation and place of business of the parties (subsection e), does not favor either state because Doe Run's headquarters are in Missouri, while Lexington's representatives for purposes of issuing the Lexington policies, Risk Specialists Company, is located in New York. (Id., p. 6).

The Court finds that the choice of law analysis favors Missouri law for the 1995-2002 Policies. As noted by Doe Run, the risks at issue in the underlying lawsuits concern parties,

operations and sites located in Missouri. (Doe Run's Opposition to Lexington Insurance Company's Motion for Summary Judgment Re: The Pollution Exclusion ("Response"), ECF No. 95, p. 9). Doe Run is headquartered in Missouri, with nearly all of its business, property and employees in Missouri. (Id.). Although Lexington emphasizes Doe Run's national business and risks, these Policies related overwhelmingly to business operations and risks in Missouri. (Id., pp. 9-10). Accordingly, the Court applies Missouri law to all of the Policies.

**B. Collateral Estoppel**

As an initial matter, Lexington argues that this Court should apply the doctrine of collateral estoppel to the recent opinion in Doe Run Res. Corp. v. Lexington Ins. Co., No. 4:10CV01897 AGF, 2012 U.S. Dist. LEXIS 56412 (E.D. Mo. Apr. 23, 2012) (hereinafter the "Nadist Lawsuit"). "Collateral estoppel, or issue preclusion, is used to preclude the relitigation of an issue that already has been decided in a different cause of action." Brown v. Carnahan, 2012 Mo. LEXIS 163, at *45-46 (Mo. July 31, 2012)(citing Sexton v. Jenkins & Associates, Inc., 152 S.W.3d 270, 273 (Mo. banc 2004)). "The doctrine requires that the issue was fully and fairly litigated, that the issue was essential to the earlier judgment, and that the earlier judgment be final and binding on the party against whom it is asserted." Sexton, 152 S.W.3d at 273; see also Liberty Mut. Ins. Co. v. FAG Bearings Corp., 335 F.3d 752, 758 (8th Cir. 2003) (citing King Gen. Contractors v. Reorganized Church of Jesus Christ of Latter Day Saints, 821 S.W.2d 495, 500 (Mo. 1991))(Under Missouri law, courts consider three factors in determining whether to apply the collateral estoppel doctrine: "(1) whether the issue decided in the prior adjudication was identical to the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; and (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication."). "A district court has 'broad discretion' in deciding whether to apply the offensive

collateral estoppel doctrine." Heartland Acad. Cmty. Church v. Waddle, 595 F.3d 798, 811 (citing White Earth Band of Chippewa Indians v. Alexander, 683 F.2d 1129, 1134 (8th Cir. 1982); Parklane Hosiery Co. v. Shore, 439 U.S. 322, 331, 99 S. Ct. 645, 58 L. Ed. 2d 552 (1979)).

The Court declines to exercise its discretion and apply collateral estoppel in this instance. Of most importance, the Court notes that the Nadist Lawsuit is currently on appeal, Doe Run Res. Corp. v. Lexington Ins. Co., No. 12-2215 (8th Cir.), and not a final judgment. Therefore, the Nadist Lawsuit has no preclusive effect on this case. Nevertheless, the Court finds the analysis and decision in the Nadist Lawsuit persuasive due to the similar issues in this case, and largely adopts its reasoning.

**C. Pollution Exclusion**

Lexington argues that the allegations in the Briley and McSpadden Lawsuits fall within the pollution exclusion and, therefore, it is not required to pay for Doe Run's defense of these lawsuits. In opposition, Doe Run argues that the Policies at issue do not "exclude lead or other commercial products or commercial materials produced by Doe Run." (Response, p. 5). Doe Run emphasizes that lead is not one of the specifically enumerated "pollutants".

The Court recognizes that "[a] duty to defend 'arises whenever there is a potential or possible liability to pay based on the facts at the outset of the case,' and it is 'broader than the duty to indemnify.'" Secura Ins. v. Horizon Plumbing, Inc., 670 F.3d 857, 861 (8th Cir. Mo. 2012)(quoting McCormack Baron Mgmt. Servs., Inc. v. Am. Guarantee & Liab. Ins. Co., 989 S.W.2d 168, 170 (Mo. 1999)). "The duty to defend is determined by the language in the policy and the allegations in the complaint." Secura Ins., 670 F.3d at 861; McCormack Baron Mgmt. Servs., Inc., 989 S.W.2d at 170. Under Missouri law, the insured has the burden to show that the policy covers its loss.

Secura Ins., 670 F.3d at 861-62; American States Ins. Co. v. Mathis, 974 S.W.2d 647, 649 (Mo. Ct. App. 1998).

The Court also notes that Missouri "strictly construes exclusionary clauses against the drafter, who also bears the burden of showing the exclusion applies." Burns v. Smith, 303 S.W.3d 505, 510 (Mo. banc. 2010)(citing Aetna Cas. & Sur. Co. v. Haas, 422 S.W.2d 316, 321 (Mo. banc 1968); Crossman v. Yacubovich, 290 S.W.3d 775, 779 (Mo. Ct. App.2009); McRaven v. F-Stop Photo Labs, Inc., 660 S.W.2d 459, 462 (Mo. Ct. App.1983)); Gear Auto., L.L.C. v. Acceptance Indem. Ins. Co., No. 11-CV-00421-W-FJG, 2012 U.S. Dist. LEXIS 69775, at *13 (W.D. Mo. May 18, 2012). "When an insurance company seeks to escape coverage based on a policy exclusion, the burden is on the insurer to establish that the exclusion is applicable." Hartford Accident & Indem. Co. v. Doe Run Res. Corp., No. 4:08-CV-1687 CAS, 2010 U.S. Dist. LEXIS 40608, at *7-8 (E.D. Mo. 2010) (citing American Family Mut. Ins. Co. v. Bramlett ex rel. Bramlett, 31 S.W.3d 1, 4 (Mo. Ct. App. 2000)); Agri. Ins. Co. v. Focus Homes, Inc., 212 F.3d 407, 410 (8th Cir. 2000)(citation omitted)("Exclusions are to be strictly interpreted against the insurer and an insurer denying coverage because of an exclusion bears the burden of proof."); Stan Koch & Sons Trucking, Inc. v. Great W. Cas. Co., 517 F.3d 1032, 1040 (8th Cir. 2008).

First, the Court must address whether the pollution exclusion is ambiguous. Under Missouri law, "courts look only to the contract language when interpreting the agreement, unless the language is ambiguous." Clifton v. Am. Family Mut. Ins. Co., 507 F.3d 1102, 1105 (8th Cir. 2007) (citing Royal Banks v. Fridkin, 819 S.W.2d 359, 361 (Mo. 1991)). Robbins v. McDonnell Douglas Corp., 27 S.W.3d 491, 496 (Mo. Ct. App. 2000) ("An ambiguity does not exist merely because the parties dispute the meaning of the contract."). "To determine whether a contract is ambiguous, we consider the instrument as a whole, giving the words contained therein their ordinary meaning." Deal v.

Consumer Programs, Inc., 470 F.3d 1225, 1230 (8th Cir. Mo. 2006)(citing Young Dental Mfg. Co. v. Engineered Prods., Inc., 838 S.W.2d 154, 156 (Mo. Ct. App. 1992)). "'If the language is ambiguous, it will be construed against the insurer.'" Hartford Accident & Indem. Co., 2010 U.S. Dist. LEXIS 40608, at *6 (quoting Peters v. Employers Mut. Cas. Co., 853 S.W.2d 300, 302 (Mo. 1993) (en banc)). "'Insurance policies are to be given a reasonable construction and interpreted so as to afford coverage rather than to defeat coverage.'" Hartford Accident & Indem. Co., 2010 U.S. Dist. LEXIS 40608, at *6-7 (quoting Nixon v. Life Investors Ins. Co. of America, 675 S.W.2d 676, 679 (Mo. Ct. App. 1984)).

The Court finds that the language in the pollution exclusions is not ambiguous. The pollution exclusions refer to the "release ... of ... pollutants or contaminants ..." (Doe Run SUMF, ¶2). The Merriam-Webster dictionary defines "pollutant" as "something that pollutes."[2] In turn, the Merriam-Webster dictionary defines "pollute" as "to contaminate (an environment) especially with man-made waste."[3] These definitions are unambiguous with respect to the allegations in this case. The Briley and McSpadden Lawsuits allege that Doe Run released lead, cadmium, and other toxic chemicals from its chat and tailings piles in Leadwood, Missouri. They allege that these toxic substances contaminated the environment around the Leadwood Pile and injured the plaintiffs. Thus, these allegations describe pollutants, as that term is used in its typical and ordinary sense. See Medical Protective Co. v. Bubenik, 594 F.3d 1047, 1051 (8th Cir. 2010)(quoting Seeck v. Geico General Ins. Co., 212 S.W.3d 129, 132 (Mo. 2007)("Missouri law accords the terms of an insurance policy 'the meaning which would be attached by an ordinary person of average understanding.'").[4]

---

[2]See http://www.merriam-webster.com/dictionary/pollutant?show=0&t=1347030282

[3]See http://www.merriam-webster.com/dictionary/pollutes

[4]The Court need not address the underwriting of the Policies because the Court does not find the Policies to be ambiguous.

Accordingly, the Court finds that Briley and McSpadden Lawsuits fall within the pollution exclusion of the Policies and Lexington does not have a duty to defend Doe Run.

Relying primarily on the decision in Hocker Oil Co. v. Barker-Phillips-Jackson, Inc., 997 S.W.2d 510 (Mo. Ct. App. 1999), Doe Run claims that the lead, other metal concentrates, and chat that it produces, stores, sells and/or transports "are not unambiguously pollutants, unless expressly listed in the definition of 'pollutant' in the policy." (Response, p. 13). Hocker Oil involved the accidental release of 2,000 gallons of gasoline into the ground by the gasoline company, Hocker. Id., 997 S.W. 2d at 512. The defendant insurance company argued that there was no coverage based upon the pollution exclusion. Id. at 512-13.[5] To which, Hocker responded that gasoline was its product, not a pollutant. Id., at 213. Hocker settled the underlying litigation case and demanded the defendant insurance company pay the settlement amount and its defense costs. Id. The trial court granted partial summary judgment for Hocker against the insurance company because the pollution exclusion in the multi-peril policy did not preclude liability under that policy.

On appeal, the defendant insurance company contended the pollution exclusion in the policy was unambiguous and that any damages arising from the release of gasoline from Hocker's underground storage case were not covered. Id. at 515. Analyzing the policy "in light of the meaning that would ordinarily be understood by the layman who acquired the policy," the Missouri Court of Appeals held that the policy was ambiguous as to whether "gasoline" was a pollutant for purposes of the pollution exclusion. Id., at 516-18. The court determined that Hocker reasonably

---

[5]The pollution exclusion "states the coverage does not apply 'to bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants.' 'Pollutants' are defined as 'any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.' 'Waste' is defined as including 'materials to be recycled, reconditioned or reclaimed.' Gasoline is not specified by name as 'a pollutant.'"

Hocker Oil Co., 997 S.W.2d at 514-15.

could have concluded that gasoline was not a pollutant for purposes of the exclusion "since it was not specifically identified as such." Id., at 518. As further support for Hocker's belief that gasoline was not a pollutant, the court noted that "Hocker is in the business of transporting, selling and storing gasoline on a daily basis. Gasoline is not a pollutant in its eyes. Gasoline is the product it sells." Id. Ultimately, the court held that the policy was "ambiguous as to whether gasoline was a pollutant for purposes of the exclusion" and construed that ambiguity against the drafter. Id.

The Court finds Hocker Oil to be unpersuasive in this instance. Hocker Oil involved the one-time release of Hocker Oil's finished product, gasoline, into the ground. In contrast, the plaintiffs in the Briley and McSpadden Lawsuits allege Doe Run negligently, carelessly and recklessly released lead, cadmium, and other toxic substances into the community for years. (Doe Run SUMF, ¶¶115-23). That is, unlike Hocker's isolated accident, the Briley and McSpadden Lawsuits allege the continual and systematic release of pollutants into the environment. Moreover, despite Doe Run's pleas to the contrary, the products involved here are not finished products. Even if some of these raw materials are marketable (as Doe Run claims), their continued release of these contaminants into the community constitutes pollution. In sum, "the Court believes that contamination caused by a gasoline leak resulting from a failed plug is quite different from contamination resulting from lead concentrate abandoned on a landowner's property." Nadist Lawsuit, 2012 U.S. Dist. LEXIS 56412, at *23.

Doe Run also relies on the decision in The Doe Run Resources Corp. v. American Guarantee & Liability Insurance Co., Circuit Court of St. Louis County, Missouri, Cause No. 10-SL-CC-1716. The American Guarantee court relied on the Hocker Oil decision to determine that the pollution exclusion, when strictly construed against the insured, was "clearly applicable as a matter of law to bar any coverage to Doe Run." Id. at p. 7. The American Guarantee court noted that the policy's

definition of pollutant did not identify lead, arsenic, cadmium or sulfur dioxide as "pollutants," just as the pollution exclusion in Hocker Oil did not identify gasoline as a pollutant. Id., pp. 6-7. This Court, however, finds that the mere fact that lead is not listed in the pollution exclusion does not "undermine the pollution exclusion or reverse its effect." Nadist Lawsuit, 2012 U.S. Dist. LEXIS 56412, at *25; Hartford Accident & Indem. Co., 2010 U.S. Dist. LEXIS 40608, at *21 ("The Pollution Exclusion does not ... specifically list lead as a pollutant. The Court finds that this omission, by itself, does not automatically render the exclusion ambiguous."). Having found that the pollution exclusion unambiguously encompasses the allegations in the Briley and McSpadden Lawsuits, the Court finds no basis for inferring an ambiguity simply because lead is not specifically enumerated in the pollution exclusion.[6]

Moreover, the Court finds unpersuasive the decision in Hartford Accident & Indem. Co. v. Doe Run Res. Corp., which held that issues of fact precluded entry of summary judgment in favor of the insurer with respect to the pollution exclusion. The pollution exclusion at issue in the Hartford Accident & Indem. Co. was narrower than the one at issue in the instant litigation. Nadist Lawsuit, 2012 U.S. Dist. LEXIS 56412, at *23.[7] Similarly, the allegations in the instant case (and

---

[6]Likewise, the Court does not find an ambiguity based upon the deleted lead-specific exclusion.

[7]"The Hartford insurance policies at issue contain the following exclusion for injury or damage arising out of pollutants (the "Pollution Exclusion"):

> It is agreed that the insurance does not apply to personal injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental."

Hartford Accident & Indem. Co., 2010 U.S. Dist. LEXIS 40608, at *8.

the Nadist Lawsuit) appear to be narrower than the ones involved in the Hartford Accident & Indem. Co. litigation. Nadist Lawsuit, 2012 U.S. Dist. LEXIS 56412, at *25.[8]

Based upon the foregoing, the Court finds that, under Missouri law and based upon the undisputed material facts, the pollution exclusion in the Policies applies and Lexington is not required to provide for defense costs incurred by Doe Run related to the Briley and McSpadden Lawsuits.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Lexington Insurance Company's Motion for Summary Judgment Regarding the Pollution Exclusion [59] is **GRANTED**. Plaintiff's claims against Defendant Lexington Insurance Company are dismissed.

**IT IS FURTHER ORDERED** that The Doe Run Resources Corporation's Motion for Partial Summary Judgment Against Lexington Insurance Company [54] and Defendant Lexington Insurance Company's Motion for Summary Judgment Based on the "Loss in Progress" Doctrine [62] are **DENIED** as moot.

An appropriate judgment is filed simultaneously herewith in accordance with the foregoing.

---

[8]The Warden Petition, at issue in that case, alleged:

> At all times herein mentioned, defendants, and each of them, were negligent and careless as aforedescribed and in one or more of the following respects: (a) Permitted lead and other harmful metals and substances to be mined, generated, smelted, processed, released, dumped, deposited and placed into the air and deposited onto the land when defendants knew, or by the exercise of ordinary care should have known, that the mining, generating, smelting, releasing, dumping, depositing, handling, storing, treating, transporting, loading, unloading and disposing of [lead, metals and other substances] was dangerous and harmful to the public, and more particularly, plaintiffs . . .

Hartford Accident & Indem. Co., 2010 U.S. Dist. LEXIS 40608, at *13-14.

Dated this 28th day of September, 2012.

John A. Ross

UNITED STATES DISTRICT JUDGE